# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| PETROSANTANDER (USA), INC., | |
| *Plaintiff,* | |
| vs. | Case No. 16-CV-01320-EFM-GLR |
| HDI GLOBAL INS. CO., as successor in interest to HDI-GERLING AMERICA INS. Co., | |
| *Defendant.* | |

## MEMORANDUM AND ORDER

This case arose after Plaintiff PetroSantander (USA), Inc. sought coverage from its insurer following a saltwater spill in Meade County, Kansas. HDI-Gerling American Ins. Co. ("HDI-Gerling") issued the insurance policy in question, and HDI Global Ins. Co. ("HDI") is the successor in interest to HDI-Gerling. The matter is currently before the Court on the parties' cross-motions for partial summary judgment regarding whether the notice-prejudice rule applies to the current dispute. Specifically, the limited issue before the Court is whether Defendant must demonstrate that Plaintiff's alleged failure to provide notice as required by the pollution endorsement caused it prejudice before it may deny coverage based on Plaintiff's alleged failure to timely report the pollution incident. As detailed below, the Court grants Plaintiff's motion for partial summary judgment (Doc. 41) and denies Defendant's motion for partial summary judgment (Doc. 35). Plaintiff has also filed a motion for leave to amend to add a claim for reformation of the policy

based on the arguments presented in its motion for partial summary judgment. Because the Court finds that Plaintiff need not assert a claim for reformation and Plaintiff has indicated it filed this motion out of an abundance of caution, the Court denies Plaintiff's motion for leave to amend (Doc. 42) as moot.

## I.    Factual and Procedural Background[1]

Plaintiff PetroSantander (USA), Inc. ("Plaintiff") is an oil and gas company that operates a portion of its business in Kansas. At the time relevant to this dispute, Plaintiff was insured under an insurance policy issued by HDI-Gerling, identified as Policy No. GK091000081-01 (the "Policy"), with a policy period beginning on October 10, 2013, and ending October 10, 2014. The Policy was delivered to Plaintiff in Houston, Texas, and was reviewed by Plaintiff's Chief Financial Officer shortly after its receipt. After entering the Policy, HDI ("Defendant") took assignment of HDI-Gerling's rights and obligations under the Policy, and is the successor in interest to HDI-Gerling.

On the Common Policy Declarations Page, HDI-Gerling is listed under "Company Name" and IMA, Inc. (Wichita Division) ("IMA") is listed under "Producer Name." PetroSantander is listed as the "Named Insured" of the Policy. The Commercial General Liability Coverage Form ("CGL") states that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy," and states that "[t]he words 'we', 'us' and 'our' refer to the company providing this insurance."

The Insuring Agreement found in Section I, Coverage A of the CGL states, in relevant part, "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because

---

[1] For purposes of evaluating the issue of notice-prejudice, as argued in the parties' cross-motions for partial summary judgment, the parties have stipulated to the following facts.

of 'bodily injury' or 'property damage' to which this insurance applies." The exclusions found in Section I, Coverage A of the CGL include an exclusion for pollution, exclusion (f), that states that the insurance coverage afforded under the Policy does not apply to " 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' " under a variety of circumstances. The Policy also includes an Energy Limited Pollution Liability Extension Endorsement, which modified the insurance provided under the CGL by deleting exclusion (f) and replacing it with the following:

This insurance does not apply to:

**f.    Pollution**

(1)    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

. . . .

(2)    Any loss, cost or expense arising out of [certain requests, demand, orders, requirements, claims, or suits]:

. . . .

(3)    Paragraphs (1) and (2) of this exclusion do not apply to that portion of any "occurrence" which is caused by a "pollution incident" which meets all of the following conditions:

(a)    The "pollution incident" is a "sudden and accidental event" and also is neither expected or intended by any insured; and

(b)    The "pollution incident" first commenced at a specific time and date during the policy period. Any "bodily injury" or "property damage" caused or contributed to by any "pollution incident" that commenced prior to the beginning of the policy period shown in the Declarations is excluded; and

(c)    The "pollution incident" is first known within 60 days of its beginning by you or any of your employees, or your contractor, subcontractor, or any of their employees: and

> (d)  An attempt to end the "pollution incident" is made as soon as possible after it first becomes known to you or any of your employees, or your contractor, subcontractor, or any of their employees; and
>
> (e)  The "pollution incident" is reported to us within 120 days after it first becomes known to you or any of your employees, or your contractor, subcontractor, or any of their employees; and
>
> (f)  The "pollution incident" does not originate from an "underground storage tank"; and
>
> (g)  The "pollution incident" does not result from your willful or deliberate failure to comply with any government statute, rule, regulation, or order.

On or about August 10, 2014, Plaintiff spilled salt water (the "Spill") over land in rural Meade County, Kansas (the "Subject Property"), resulting in property damage to the Subject Property.  The Spill constitutes an "occurrence," defined in the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  The Spill also constitutes a "pollution incident," defined in the Policy as:

> an "occurrence" consisting of any actual or alleged emission, discharge, release or escape of "pollutants" into or upon land, the atmosphere, or body of water provided that such emission, discharge, release or escape results in "environmental damage".  The entirety of any such actual or alleged emission discharge, release or escape shall be deemed to be a single "pollution incident".

Plaintiff discovered the Spill on August 14, 2014.  Plaintiff provided notice to IMA on September 19, 40 days after Plaintiff discovered the Spill.  Defendant, however, did not receive notice of the Spill until December 29, 141 days after Plaintiff discovered the Spill.  Defendant did not suffer actual prejudice in the investigation of the claim related to the Spill due to Plaintiff's failure to notify Defendant within 120 days after discovering the Spill.

Both parties have moved for partial summary judgment on the narrow issue of whether Defendant must demonstrate that it suffered prejudice as a result of Plaintiff's alleged failure to

provide Defendant with timely notice of the Spill to deny coverage under the Policy on that basis. The parties also dispute whether providing notice to IMA satisfied Plaintiff's 120-day notice obligation, but this dispute is not currently before the Court.

## II.    Legal Standard

Summary judgment is proper if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2]  A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3]  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[4] If the movant carries his initial burden, the nonmoving party may not simply rest on its pleading, but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[5]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[6]  The Court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[7]

Though the parties in this case filed cross-motions for summary judgment, the legal standard remains the same.[8]  Each party retains the burden of establishing the lack of a genuine

---

[2] Fed. R. Civ. P. 56(a).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citation omitted).

[5] *Id*. (citing Fed. R. Civ. P. 56(e)).

[6] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citation omitted).

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[8] *City of Shawnee v. Argonaut Ins. Co*., 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008).

issue of material fact and entitlement to judgment as a matter of law.[9]  While the Court generally considers each motion separately,[10] if the cross-motions overlap the Court may address the legal arguments together.[11]

### III.      Analysis

#### A.      Choice of Law

A federal court sitting in diversity must apply the choice of law rules of the state in which it sits.[12]  Accordingly, the Court applies Kansas choice of law rules.  The parties agree that Kansas follows the *lex loci contractus* rule and that the law of the state where the insurance contract is made controls.[13]  They further agree that Kansas courts generally find that the contract is made in the state where the policy is delivered, and in this case, the Policy was delivered to Plaintiff in Texas.  Plaintiff, however, argues that if the Court finds that the notice-prejudice rule does not apply in this case under Texas law, then the Court should apply Kansas law to this dispute because applying Texas law would violate Kansas public policy.

Because the parties initially agree that Texas law applies to the Policy, the Court will proceed to analyze the dispute under Texas law.  If the Court determines that Texas law does not require Defendant to demonstrate prejudice from an untimely notice, it will address Plaintiff's

---

[9] *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F. Supp. 1375, 1382 (D. Kan. 1997) (citing *Houghton v. Foremost Fin. Servs. Corp.*, 724 F.2d 112, 114 (10th Cir. 1983)).

[10] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[11] *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010).

[12] *Ryan Dev. Co., L.C. v. Ind. Lumbermens Mut. Ins. Co.*, 783 F. Supp. 2d 1179, 1181 (D. Kan. 2011) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941)).

[13] *See also Moses v. Halstead*, 581 F.3d 1248, 1252 (10th Cir. 2009) (citing *Layne Christensen Co. v. Zurich Canada*, 30 Kan. App. 2d 128, 38 P.3d 757, 766-67 (2002)).  The Court agrees that Kansas courts would apply Texas law to this dispute.

argument that Texas law violates Kansas public policy and the Court should apply Kansas law to the dispute.

**B.    The Notice-Prejudice Rule**

When the notice-prejudice rule applies, it prohibits an insurer from denying coverage when the insured fails to comply with a notice requirement unless the insurer demonstrates that it suffered prejudice as a result of the untimely notification. While the parties agree that Texas courts apply this rule in some circumstances, the parties disagree as to whether Texas courts would apply the notice-prejudice rule in the current dispute. The Texas Supreme Court has not addressed the notice-prejudice rule in the context presented here, involving a CGL policy with a limited pollution liability extension endorsement that deletes and replaces the pollution exclusion from the CGL and provides for limited coverage of pollution incidents. In deciding this issue, the Court must rule in the manner it believes the Texas Supreme Court would rule.[14]

Plaintiff argues that Texas law requires application of the notice-prejudice rule to the current dispute, primarily relying upon an order issued by the Texas Board of Insurance adopting a mandatory notice-prejudice requirement for all CGL policies.[15] Defendant claims that the notice-prejudice rule does not apply to the pollution endorsement and urges the Court to follow the Fifth Circuit's holding in two cases involving similar pollution endorsements.

*1.    Texas Law*

a.    Order 23080

In 1973, the Texas State Board of Insurance ("Board") issued Order No. 23080 ("Order 23080" or "Order"). The Board "considered and approved a filing by the Insurance Services Office

---

[14] *Starr Indem. & Liability Co. v. SGS Petroleum Ser. Corp.*, 719 F.3d 700, 702 (5th Cir. 2013).

[15] Plaintiff also argues that Texas has morphed into a strict notice-prejudice jurisdiction for all cases.

proposing an Amendatory Endorsement to be attached to all General Liability policies, providing Bodily Injury Liability coverage and Property Damage Liability coverage, effective on or after May 1, 1973."[16]  The Board's Order directs that the Amendatory Endorsement "must be attached to all General Liability policies issued or delivered in Texas," and the endorsement states:

> As respects *bodily injury* liability coverage and *property damage* liability coverage, unless the company is prejudiced by the *insured's* failure to comply with the requirement, any provision of this policy requiring the *insured* to give notice of action, *occurrence* or loss, or requiring the *insured* to forward demands, notices, summons or other legal process, shall not bar liability under this policy.[17]

The Board issued this Order in response to the Texas Supreme Court's decision in *Members Mutual Insurance Co. v. Cutaia*,[18] where the Texas Supreme Court seemingly invited the Board to do so.  The Fifth Circuit has summarized the Texas Supreme Court's *Cutaia* decision and the resulting enactment of Order 23080 as follows:

> There [in *Cutaia*], the court addressed "[o]nly the condition regarding the forwarding of suit papers," and concluded that in light of the plain wording of the contract, as well as the prior holdings of the court, the notice-of-suit requirement contained in the automobile liability policy at issue was a condition precedent such that noncompliance yielded forfeiture of coverage. *Id*. at 278–81.  In reaching this conclusion, however, the court acknowledged "the apparent injustice which result[ed] in this particular case," stating further that it "share[d] some of the impatience which naturally arises when a reasonable provision or condition in an insurance policy is used by the insurance company to defeat what appears to be a valid claim."  *Id*. at 281.
>
> Nevertheless, the *Cutaia* court asserted that it would not rewrite insurance contracts in order to remedy this apparent injustice, noting rather that it was up to the State Board of Insurance or the legislature to "insert a provision that violations of conditions precedent will be excused if no harm results from their

---

[16] State Bd. of Ins., *Revision of Texas Standard Provision for General Liability Policies—Amendatory Endorsement-Notice*, Order No. 23080 (Mar. 13, 1973), available at http://www.tdi.texas.gov/commercial/pcck23080.html (last updated Mar. 16, 2018) (hereinafter "Order 23080").

[17] Order 23080.

[18] 476 S.W.2d 278, 281 (Tex. 1972).

violation." *Id. The next year, by issuing Board Order 23080, the State Board of Insurance did just that.*[19]

The Texas Supreme Court has recognized the "mandatory" nature of this endorsement, including its applicability "to all Texas CGL policies."[20] In construing Order 23080, Texas courts have recognized that the mandatory nature of the endorsement requires a showing of prejudice even where the insurance contract at issue does not require prejudice.[21] Indeed, as one court has noted, the "Order significantly changed the law," and "[w]ith respect to coverage for bodily injury and property damage," the Order "essentially eliminates an insurer's ability to treat a notice requirement as a condition precedent to such coverage."[22]

      b.    Texas Caselaw

Texas courts have not addressed whether the notice-prejudice rule applies in circumstances similar to those presented here. The Texas Supreme Court, however, has issued several opinions regarding the applicability of the notice-prejudice rule in Texas, and since *Cutaia*, has in every instance applied the rule.[23] Although not directly on point, for context, the Court provides a brief summary of the Texas Supreme Court's decisions since *Cutaia* regarding notice-prejudice.

---

[19] *Berkley Reg'l Ins. Co. v. Philadelphia Indem. Ins. Co.*, 690 F.3d 342, 345 (5th Cir. 2012) (alterations in original) (emphasis added).

[20] *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 632 (Tex. 2008). *See also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Crocker*, 246 S.W.3d 603, 609 (Tex. 2008).

[21] *Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 866 n.9 (Tex. App. 1998) ("The insurance contract at issue in this case does not require 'prejudice' before the company may assert a 'late notice' defense. Texas Board of Insurance Order No. 23080 requires a showing of prejudice before allowing a 'late notice' defense on any general liability policy, however.") (citations omitted). Other courts of appeals have also recognized the mandatory nature of Order 23080. *See Chiles v. Chubb Lloyds Ins. Co.*, 858 S.W.2d 633, 635 (Tex. App. 1993) (citing *Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8, 11 n.1 (Tex. App. 1983)).

[22] *Coastal Refining & Mktg., Inc. v. U.S. Fidelity & Gaur. Co.*, 218 S.W.3d 279, 285 (Tex. App. 2007).

[23] *See, e.g., Lennar Corp. v. Markel Am. Ins. Co.*, 413 S.W.3d 750, 760 (Tex. 2013) (J. Boyd, concurring) ("This Court has directly addressed the prejudice requirement five times over the past forty years. Although we declined to impose the requirement the first time we considered it," in *Cutaia*, "we then did impose it in each of the subsequent cases.").

In *Hernandez v. Gulf Group Lloyds*,[24] the Texas Supreme Court held that an insurer may only escape liability on the basis of a settlement-without-consent exclusion if the insurer is prejudiced by the insured's settlement. In arriving at this conclusion, the Court applied the "fundamental principle of contract law . . . that when one party to a contract commits a material breach . . . the other party is discharged or excused from any obligation to perform."[25] "In determining the materiality of a breach," it stated, "courts will consider, among other things, the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance."[26] The Court noted that "there may be instances when an insured's settlement without the insurer's consent prevents the insurer from receiving the anticipated benefit from the insurance contract," but noted that when the insurer is not "deprived of the contract's expected benefit" and the insurer is not prejudiced by the settlement, "the insured's breach is not material."[27] Although *Hernandez* involved a settlement without consent, many courts have applied the reasoning in *Hernandez* in other notice-prejudice situations more similar to the notice issues presented here.

In *Harwell v. State Farm Mutual Automobile Insurance Co.*,[28] the Texas Supreme Court reiterated that an "insured's failure to notify the insurer of a suit against her does not relieve the insurer from liability for the underlying judgment unless the lack of notice prejudices the

---

[24] 875 S.W.2d 691 (Tex. 1994).

[25] *Id*. at 692.

[26] *Id*. at 693 (citations omitted).

[27] *Id*.

[28] 896 S.W.2d 170 (Tex. 1995).

insurer."[29]  The Court concluded that the insured's failure to notify the insurer of the suit prejudiced the insurer as a matter of law.[30]

In *PAJ, Inc. v. Hanover Insurance Co.*,[31] the Texas Supreme Court found that the insured's failure to timely notify the insurer of a lawsuit "as soon as practicable" did not defeat coverage for an "advertising injury" under the CGL absent a showing of prejudice to the insurer.  The Court held that "an immaterial breach does not deprive the insurer of the benefit of the bargain and thus cannot relieve the insurer of the contractual coverage obligation."[32]  The Court recognized Order 23080, and noted that when the Board issued this Order "there was no standard coverage for advertising injury."[33]  It also noted differences between occurrence and claims-made policies and noted that "the timely notice provision was not an essential part of the bargained-for exchange under PAJ's occurrence-based policy."[34]  The Court did not discuss the applicability of the notice-prejudice rule to claims-made policies.

In *Prodigy Communications Corp. v. Agricultural Excess & Surplus Insurance Co.*,[35] the Texas Supreme Court held that the requirement that notice of a claim be given "as soon as practicable" was not an essential part of the bargained-for exchange under the claims-made directors and officers liability insurance policy at issue, and thus, absent prejudice, the insurer

---

[29] *Id*. at 174 (citing *Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164, 165 (Tex. 1993)).

[30] *Id*.

[31] 243 S.W.3d 630 (Tex. 2008).

[32] *Id*. at 631 (citing *Hernandez*, 875 S.W.2d at 692).

[33] *Id*. at 632-33.

[34] *Id*. at 636.

[35] 288 S.W.3d 374 (Tex. 2009).

11

could not deny coverage based on a failure to comply with the notice provision.[36]  The Court noted its prior reasoning in *Hernandez* and *PAJ*, that under "fundamental principles of contract law . . . when one party to a contract commits a material breach, the other party's performance is excused," and that "one consideration in determining the materiality of a breach is the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance."[37]  The Court reviewed the distinctions between occurrence and claims-made policies, as well as the different purposes underlying the different kinds of notice requirements.[38] It held that even if "Prodigy did not give notice 'as soon as practicable,' AESIC was not denied the benefit of the claims-made nature of its policy as it could not 'close its books' on the policy until ninety days after the discovery period expired."[39]

The Texas Supreme Court decided *Financial Industries Corp. v. XL Specialty Insurance Co.*,[40] on the same day it decided *Prodigy*, and the cases involved similar questions.  The Court adopted its reasoning from *Prodigy*, and held that an insurer must show prejudice to deny payment on a claims-made policy when the insurer's denial stems from the insured's failure to comply with a prompt-notice provision of a claims-made management liability insurance policy.[41] "Recognizing that, for the insurer, the inherent benefit of a claims-made policy is the insurer's ability 'to close its books on a policy at its expiration and thus to attain a level of predictability

---

[36] *Id.* at 375.

[37] *Id.* at 378 (quotation marks, alterations, and citations omitted).

[38] *Id.* at 378-79.

[39] *Id.* at 382 (citing *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1330 (5th Cir. 1994)).

[40] 285 S.W.3d 877 (Tex. 2009).

[41] *Id.* at 879.

unattainable under standard occurrence policies,' " the Court held that "FIC gave notice of the claim . . . before XL could 'close its books' on the policy" and since "XL was not denied the benefit of the claims-made nature of its policy, it could not deny coverage based on FIC's immaterial breach of the policy's prompt-notice provision."[42]

### 2. Fifth Circuit Decisions

Defendant relies on two Fifth Circuit cases, *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*[43] and *Starr Indemnity & Liability Co. v. SGS Petroleum Service Corp.*,[44] decided in the oil and gas context where the insurance policies at issue included pollution endorsements.[45]  In each case, the Fifth Circuit concluded that the insurer need not demonstrate prejudice to deny coverage based on the insured's failure to comply with a notice provision of the pollution endorsement.

### a. *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*

In *Matador*, "St. Paul agreed to defend and indemnify Matador against liability for 'bodily injury' and 'property damage' caused by an 'accident, including continuous or repeated exposure to substantially the same general harmful conditions.' "[46]  The CGL contained an absolute pollution exclusion clause, but Matador purchased an endorsement that provided a narrow exception to the absolute exclusion.  The limited endorsement did not replace the exclusion in the CGL, but rather, "stated that St. Paul would not apply the pollution exclusion in the event of a

_____

[42] *Id.* at 878-79 (quoting *Prodigy*, 288 S.W.3d at 380).

[43] 174 F.3d 653 (5th Cir. 1999).

[44] 719 F.3d 700 (5th Cir. 2013).

[45] *Matador* involved an oil and gas commercial general liability policy, but *Starr* is silent as to what kind of policy—whether a CGL or another type of policy—that the endorsement modified.

[46] *Matador*, 174 F.3d at 655.

'covered pollution incident.' "[47]  The endorsement defined a "covered pollution incident" as "the discharge, dispersal, release, or escape of pollutants that" (1) results from an event; (2) "[b]egins and ends within 72 hours . . . ;" (3) is known to the insured within seven days of its beginning; and (4) is reported to the insurer within 30 days of its beginning.[48]  Matador reported the pollution incident to St. Paul 38 days after its beginning, and St. Paul denied coverage based on Matador's failure to report the incident within the 30 period as required by the endorsement.[49]  Matador argued that St. Paul must demonstrate prejudice resulting from Matador's untimely notice before it could deny coverage on that basis.

The Fifth Circuit noted that the Texas Supreme Court had not addressed the issue presented, proceeded to predict how the Texas Supreme Court would decide the issue,[50] and found that St. Paul need not demonstrate prejudice to deny coverage.[51]  The key determination in the court's analysis was that the pollution endorsement more closely "resemble[d] the nature of the bargain underlying a 'claims-made' policy."[52]  This conclusion proved critical as the court stated that "the impact that untimely notice has on coverage depends on the type of insurance policy," as "courts traditionally distinguish between two types of insurance policies: 'occurrence' policies and 'claims-made' policies."[53]

---

[47] *Id.*

[48] *Id.* at 655-56.

[49] *Id.* at 656.

[50] When the Fifth Circuit decided *Matador*, the Texas Supreme Court had not yet decided *PAJ*, *Prodigy*, or *Financial Industries*.

[51] *Id.* at 658-60.  The Fifth Circuit also rejected Matador's argument that the endorsement was ambiguous.

[52] *Id.* at 659.

[53] *Id.* at 658.

"An 'occurrence' policy covers the insured for acts or omissions that occur within the policy period, regardless of whether 'the claim . . . is brought to the attention of the insured or made known to the insurer during the policy period.' "[54] Whereas, "a 'claims-made' policy covers the insured only 'for claims made during the policy [period] . . . regardless of when the covered act or omission occurred.' "[55] In "occurrence" policies, "any notice requirement is subsidiary to the event that triggers coverage," and "[c]ourts have not permitted insurance companies to deny coverage on the basis of untimely notice under an 'occurrence' policy unless the company shows actual prejudice from the delay."[56] In "claims-made" policies, however, "notice itself constitutes the event that triggers coverage," and courts strictly interpret these notice provisions, allowing a company to deny coverage without showing prejudice.[57] The different approaches, the court explained, reflect the "difference in the nature of the bargain underlying each type of policy."[58]

In analyzing the insurance policy and endorsement presented in *Matador*, the court noted that the policy shares characteristics with both types of policies, and accordingly, "look[ed] to the nature of the bargain underlying [the parties'] agreement."[59] The court noted that the basic insurance contract did not include coverage for pollution, and that the endorsement supplementing the basic agreement "constituted additional bargained for coverage."[60] It also noted that the parties

---

[54] *Id*. at 658 n.2 (quoting *Yancey v. Floyd W. & Co.*, 755 S.W.2d 914, 918 (Tex. App. 1988)) (alteration in original).

[55] *Id*. (quoting *Nat'l Union Fire Ins. Co. v. Talcott*, 931 F.2d 166, 168 n.3 (1st Cir. 1991)) (alterations in original).

[56] *Id*. at 658 (citing *FDIC v. Booth*, 82 F.3d 670, 678 (5th Cir. 1996), *Hirsch v. Tex. Lawyers' Ins. Exch.*, 808 S.W.2d 561, 562 (Tex. App. 1991)).

[57] *Id*. at 659.

[58] *Id*.

[59] *Id*.

[60] *Id*.

were "sophisticated commercial parties with comparable bargaining power."[61]    The court explained that extending the notice period under the endorsement would expand coverage and "expose St. Paul to a risk broader than the risk expressly insured against in the policy."[62] Accordingly, the court found that the nature of the bargain resembled that of a claims-made policy and "[saw] no reason to apply a prejudice requirement."[63]

   b. *Starr Indemnity & Liability Co. v. SGS Petroleum Service Corp.*

  In *Starr*, SGS obtained an excess insurance policy from Starr that contained an absolute pollution exclusion clause and added a pollution "buy-back" provision that deleted the pollution exclusion in the policy and replaced it with a provision allowing for limited pollution coverage. The buy-back provision stated that the pollution "exclusion ***shall not apply***, however, provided that the assured establishes that all of the following conditions have been met: . . . (4) ***the discharge, dispersal, release or escape was reported in writing to these underwriters within 30 days after having become known to the assured.***"[64] SGS did not provide Starr notice of a triggering incident until 59 days after it learned of the incident, and Starr sought a declaration that it need not demonstrate prejudice prior to denying coverage.[65]    In holding that Starr need not demonstrate prejudice to deny coverage, the court discussed its prior decision in *Matador* (noting that the pertinent provisions of the insurance policies in the two cases were "virtually identical"), analyzed whether *Matador* was still tenable in light of *PAJ* and *Prodigy* (determining that neither

---

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Starr*, 719 F.3d at 701 (alterations and emphases in original).

[65] *Id.*

case disturbed the holding of *Matador*), and ultimately concluded that it remained bound by *Matador*.[66]

       *3.*     *The Texas Supreme Court Would Likely Apply the Notice-Prejudice Rule Here*

It is undisputed that the Texas Supreme Court has not ruled on the specific issue presented in this case. Given the Texas Supreme Court's most recent decisions involving the notice-prejudice rule, however, as well as the mandatory nature of Order 23080, the Court predicts that the Texas Supreme Court, if presented with the dispute before the Court today, would find that Defendant must demonstrate prejudice prior to denying coverage to Plaintiff due to Plaintiff's alleged failure to timely report the Spill.

As discussed above, Texas courts have recognized that Order 23080 applies to all CGL policies, and at least one Court has concluded that even if the CGL did not include the mandatory endorsement identified in Order 23080, that it still applied to the policy in question.[67] Defendant does not contend that Order 23080 is not mandatory for insurance policies issued or delivered in Texas; nor does it contend that the Order does not apply to the Policy in question here. Instead, Defendant's sole response to Order 23080 is that the Fifth Circuit "fully considered Texas law" in deciding *Matador* and *Starr*, and still found no prejudice requirement applicable. In support of its claim that the Fifth Circuit "fully considered Texas law," Defendant notes that the appellant's brief in *Starr* specifically cited the Order, "the Order was a significant part of the *PAJ* and *Prodigy* opinions which were heavily cited and argued before the Fifth Circuit in *Matador* and *Starr*," and the Fifth Circuit had "recognized" the Order in another case it previously decided in 2012.

---

[66] *Id*. at 702-04.

[67] *See supra*, Section B.1.

17

The Court disagrees that the Fifth Circuit "fully considered" Order 23080 in deciding *Matador* and *Starr*.  First, the appellant's brief in *Starr* does not cite Order 23080 by number.  Instead, it simply mentions that the Board adopted a rule imposing a prejudice requirement in its chronology of the development of the notice-prejudice rule in Texas.  And, unlike here, the appellant did not argue that Order 23080 applied to the dispute and required the insurer to demonstrate prejudice prior to denying coverage.

Second, the Court rejects Defendant's characterization of the significance of the Order in *PAJ* and *Prodigy*.  While the *PAJ* Court discussed Order 23080, the *PAJ* Court did not rely on Order 23080 in making its holding.  Rather, the Court recognized that while the Order requires a "mandatory endorsement to *all Texas CGL policies*" providing bodily injury and property damage liability coverage, the Order did not by its terms apply to advertising injury—the injury at issue in *PAJ*—as "there was no standard coverage for advertising injury" at the time of the Board's issuance of the Order.[68]  As *PAJ* involved an advertising injury, Order 23080, by its terms, did not control the Court's decision and was not a "significant part" of the decision.  Likewise, the Order in no way played a "significant part" of *Prodigy* as it is not mentioned in the majority opinion at all and only briefly mentioned in the dissent.  Finally, neither of these opinions could have been cited or argued before the Fifth Circuit in *Matador* as the Fifth Circuit decided *Matador* before the Texas Supreme Court decided either *PAJ* or *Prodigy*.[69]

Third, that the Fifth Circuit "recognized" the Order in *Berkley Regional Insurance Co. v. Philadelphia Indemnity Insurance Co.*,[70] does not persuade the Court that the Fifth Circuit

---

[68] 243 S.W.3d at 632-33 (emphasis added).

[69] *Matador* was decided in 1999, while *PAJ* was decided in 2008 and *Prodigy* in 2009.  *See Matador*, 174 F.3d 653 (5th Cir. 1999); *PAJ*, 243 S.W.3d 630 (Tex. 2008); *Prodigy*, 288 S.W.3d 374 (Tex. 2009).

[70] 690 F.3d 342 (5th Cir. 2012).

considered the applicability of Order 23080 in either *Matador* (decided before *Berkley*) or *Starr*. In *Berkley*, the Fifth Circuit neither analyzed nor relied upon Order 23080 in holding that fact issues remained regarding whether the late notice prejudiced the insurer. Indeed, the question presented to the court presumed that prejudice must be shown as the court answered the question: "[d]oes the failure to give notice to an excess carrier until after an adverse jury verdict constitute evidence of prejudice that forfeits coverage?"[71]

Finally, the Court concludes that *Matador* is likely distinguishable as it involved a surplus lines carrier. In 1997, the Fifth Circuit issued a decision discussing Order 23080 and recognizing that the Order "only extend[ed] to policies issued by a licensed insurer," and did "not apply to surplus lines policies."[72] While neither the district court opinion nor the Fifth Circuit opinion identifies whether Matador purchased a surplus lines policy, given St. Paul's status as a "surplus lines insurance company," the Court is hesitant to assume otherwise. Thus, given that *Matador* involved a surplus lines carrier and the Fifth Circuit had recently recognized that Order 23080 does not apply to surplus line policies, the Court has strong reservations about relying on *Matador* to find Order 23080 inapplicable here.

Neither *Matador* nor *Star* provide any analysis of Order 23080, explain why the Order did not apply under the circumstances presented, or even mention the Order. The Court has no convincing evidence before it that the Fifth Circuit silently considered and rejected the application of Order 23080 to *Matador* and *Starr*, and Defendant's arguments fail to persuade the Court

---

[71] *Id*. at 345.

[72] *Hanson Prod. Co. v. Ams. Ins. Co.*, 108 F.3d 627, 629-30 (5th Cir. 1997). The court noted that the Board's authority to require the endorsement "appears to derive from its authority to promulgate standard forms" as well as "the statutory requirement that general liability policies must be approved by the Board." *Id*. at 629. The insurer submitted an affidavit from the Texas Department of Insurance stating that the surplus lines policies at issue were not subject to the Order. *Id*. at 630.

otherwise. Rather, a review of Fifth Circuit opinions specifically citing Order 23080 demonstrates that the Fifth Circuit has recognized not only that the Order applies to CGL policies, but also that the Order is "mandatory" and effectuated a "change in Texas insurance law."[73] Indeed, referencing the Order at issue here, the Fifth Circuit stated that "it is quite clear that Texas law requires a showing of prejudice. . . . on certain types of insurance policies," including general liability insurance policies.[74]

Defendant does not contest the applicability of Order 23080 to the Policy at issue here. Indeed, the reach of the Order appears to cover the CGL Policy issued to Plaintiff.[75] Accordingly, the Court concludes that the Texas Supreme Court would require Defendant to demonstrate prejudice resulting from Plaintiff's alleged failure to timely notify Defendant of the Spill prior to denying coverage based on a failure to provide such timely notification.[76]

---

[73] *Crocker v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 466 F.3d 347, 354 (5th Cir. 2006) (noting that the Board's issuance of Order 23080 constituted a "principal change in Texas insurance law" that "mandated . . . that an insurer be prejudiced by an insured's failure to provide notice before the insurer can avoid liability due to such failure"). *See also Hanson*, 108 F.3d at 629 (noting that Order 23080 was "mandatory").

[74] *Ridglea Estate Condominium Assn. v. Lexington Ins. Co.*, 415 F.3d 474, 479 (5th Cir. 2005) (citing *Hanson*, 108 F.3d at 629).

[75] To the extent Defendant contends that the pollution endorsement is not part of the CGL policy, and thus not subject to Order 23080, this argument fails. The terms of the pollution endorsement clearly indicate that it modifies and is part of the CGL policy as it deletes and replaces exclusion (f) of the CGL policy.

[76] Further, even if Order 23080 does not govern the current dispute, the Court believes that the Texas Supreme Court would require application of the notice-prejudice rule. While *Matador* and *Starr* rely on a distinction between occurrence-based and claims-made policies, the Texas Supreme Court has made clear that this distinction is not dispositive as to application of the notice-prejudice rule. Indeed, that Court has applied the notice-prejudice rule in a "claims-made policy" where the insurer did not lose the inherent benefit underlying the claims-made policy. *See Prodigy*, 288 S.W.3d at 382. It has identified "the inherent benefit of a claims-made policy [as] the insurer's ability 'to close its books on a policy at its expiration and thus to attain a level of predictability unattainable under standard occurrence policies.' " *Fin. Indus. Corp.*, 285 S.W.3d at 878-79 (quoting *Prodigy*, 288 S.W.3d at 380) (holding that the insured gave notice of the claim "before [the insurer] could 'close its books' on the policy," and thus, the insurer "was not denied the benefit of the claims-made nature of its policy"). Here, Defendant could not "close its books" until 180 days after a pollution incident or the expiration of the policy because Plaintiff had 60 days to discover the incident and then 120 days from the date of discovery to report the incident. If the "inherent benefit of a claims-made policy is the insurer's ability to 'close its books' on a policy," as the Texas Supreme Court has stated, Defendant was arguably not denied this benefit because it could not have "closed its books" on the Policy before it received notice of the Spill. Defendant does not allege the existence of any other benefit underlying the policy that it allegedly lost due to Plaintiff's allegedly untimely notification of the Spill.

### IV.    Conclusion

The Court predicts that the Texas Supreme Court would require Defendant to demonstrate prejudice prior to denying coverage under the CGL based on Plaintiff's alleged failure to comply with the reporting deadlines contained in the limited pollution endorsement.  Accordingly, the Court grants Plaintiff's motion for partial summary judgment and denies Defendant's motion for partial summary judgment.

Further, the Court denies Plaintiff's motion for leave to amend its complaint to add a claim for reformation.  Plaintiff indicated that it sought leave to amend "out of an abundance of caution" to ensure that it preserved its arguments regarding the notice-prejudice rule.  Because the Court finds that the notice-prejudice rule applies, Plaintiff's proposed amendment is unnecessary, and its motion for leave to amend is denied as moot.

**IT IS THEREFORE ORDERED** that Plaintiff's Cross-Motion for Partial Summary Judgment  (Doc. 41) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. 35) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Amend Complaint (Doc. 42) is **DENIED** as moot.

**IT IS SO ORDERED**.

Dated this 9th day of April 2018.


_Eric F. Melgren_
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE